Judge:    Christopher M. Alston
Chapter   Chapter 7

## IN THE UNITED STATES BANKRUTPCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

RIDGEBACK EXCAVATING, LLC,

                Debtor.

EDMUND J. WOOD, solely in his capacity as Chapter 7 Trustee of the estate of Ridgeback Excavating, LLC.,

            Plaintiff,

        v.

ALEA BATTIN AND JOHN DOE BATTIN, husband and wife and the marital community composed thereof,

and

CASHABLE, LLC a New York Corporation,

and

ROBERT COHEN and JANE DOE COHEN, husband and wife and the marital community composed thereof,

and

WILLIAM and DONNA JAVINES, husband and Wife and the marital community composed thereof,

and

Case No. 22-10259-CMA

COMPLAINT

COMPLAINT

Page 1

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

RANDY KAN and JANE DOE KAN, husband and wife and the marital community composed thereof,

and

LENDING CLUB CORP,

                Defendants.

Edmund J. Wood, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Ridgeback Excavating, LLC, by and through his undersigned counsel, complains as set forth below.

## I. JURISDICTION AND VENUE

1.1     This is an action to avoid preferential transfers, fraudulent transfers, to compel turnover of Property of the Estate and for breach of fiduciary duty.

1.2     This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(E),(F), (H) and (O).

1.3     This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 157(a) and (b), 1334(a) and (b), and 11 U.S.C. §§ 105, 542, 544, 547, 548, 550 and 551.

1.4     This matter has been referred to the Bankruptcy Judges of this District pursuant to General Rule 7 of the Rules for the United States District Court for the Western District of Washington

1.5     Venue is proper under 28 U.S.C. § 1409.

## II. PARTIES

2.1     <u>Debtor.</u> Ridgeback Excavating, LLC ("the Debtor" or "RBE") filed a voluntary Chapter 7 petition on February 17, 2022 ("Petition Date").

2.2     <u>Trustee.</u> Edmund J. Wood ("Wood" or "Trustee") was appointed as the Chapter 7 Trustee for the case on February 17, 2022. The Trustee is authorized to bring

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 2

this action pursuant to §§ 105, 542, 544, 547, 548, 550 and 551 of the Bankruptcy Code and does so solely in his capacity as Trustee for the Ridgeback Excavating LLC estate.

2.3 **Defendant Alea Battin.** Defendant Alea Battin and John Doe Battin are married and constitute a marital estate. Any act done by one was done for the benefit of the marital community. They are residents of the State of Texas. Alea Battin is the former Managing Member and sole member of the Debtor, is in control of the Debtor and is an insider of the Debtor as defined in § 101(31) of the Bankruptcy Code.

2.4 **Cashable, LLC,** Upon information and belief, Cashable, LLC. is a New York Corporation that sells cashable and redeemable guaranteed investment certificates. Cashable conducts business with residents of the State of Washington.

2.5 **Robert Cohen and Jane Doe Cohen.** Robert and Jane Doe Cohen are husband and wife and constitute a marital community. Any action taken by one was taken for the benefit of the marital community. Robert and Jane Doe Cohen are both believed to be residents of the State of Washington.

2.6 **William and Donna Javines**. William and Donna Javines are husband and wife and constitute a marital community. Any act done by one was done for the benefit of the community. William and Donna Javines are residents of the State of Washington. William and Donna Javines are the parents of Alea Battin and as such are insiders as defined in § 101(31) of the Bankruptcy Code.

2.7 **Randy Kan and Jane Doe Kan**. Randy Kan and Jane Doe Kan are husband and wife and constitute a marital community. Any act done by one was done for the benefit of the community. Randy Kan and Jane Doe Kan are believed to be residents of the State of Washington.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

Page 3

2.8 **Lending Club**. The Lending Club is a corporation believed to be incorporated in the State of Pennsylvania, which has conducted business with the Debtor and other residents of the State of Washington.

### III. STATEMENT OF FACTS

**History of Ridgeback Excavating**

3.1 Alea Battin ("Alea[1]") and Robert Battin ("Battin") were married. Battin worked at Northern Land Development and had experience in the excavation field and numerous contacts. Alea had worked at previous excavation/construction related businesses. They decided to start their own excavating company.

3.2 A co-worker of Battin's at Northern Land Development, Scott Fletcher ("Fletcher"), agreed to go into business with Alea and Battin. Fletcher and Battin were in charge of preparing and performing all of the bidding for contracts and fulfilling and performing any contracts obtained. Alea was in charge of the office.

3.3 Ridgeback Excavating, LLC was formed in Washington on May 10, 2017. The Governor was listed as Alea.

3.4 On June 5, 2017, an Amended Report was filed which listed the Governors as Battin and Fletcher. On June 15, 2017, an Amended Report was filed which listed the Governors as Battin, Fletcher and Alea.

3.5 On September 14, 2017, an Amended Report was filed which listed the Governors as Alea and Mila Fletcher, the wife of Fletcher. On June 1, 2018, the Annual Report was filed which listed the Governors as Alea and Mila Fletcher.

3.6 On January 1, 2019, The Annual Report was filed which listed Alea as the only Governor. The 2020 and 2021 Annual Reports list Alea as the only Governor.

---

[1] The Plaintiff means no disrespect by using Ms. Battin's first name and is doing so only because there are two Battins.

COMPLAINT

Page 4

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

3.7     No Annual Report was filed for the years 2022 or 2023. Ridgeback was Administratively Dissolved on February 9, 2023.

**Ridgeback Begins Operating with No Capital**

3.8     In October of 2017, the Debtor began operating.

3.9     There was never any capital contributed to the company. The principals used personal credit cards and advances from upcoming projects to fund the company at the beginning. Once the Debtor was fully operating it started using non-traditional, higher interest loans to fund the company. It also factored most, if not all, of its accounts receivables.

3.10    Upon information and belief, the Trustee alleges that by mid-2018 there were substantial disagreements between Battin, Fletcher and Alea relating to all aspects of the business and its operations.

3.11    By the end of the fourth quarter of 2018 Fletcher had decided to resign and give up his interest in the Debtor. However, he wanted compensation for his interest.

3.12    Upon information and belief, the Plaintiff alleges that Fletcher was paid $105,000, which was obtained from a refinance of Mr. Battin's residence. On January 16, 2019, a 2017 Big T Utility Trailer which had been titled in the name of the Debtor was transferred to Fletcher. Upon information and belief, the Plaintiff alleges that the value of the utility trailer was $5,000.

3.13    Upon information and belief, the Plaintiff alleges that when Fletcher gave up his interest in the Debtor at the end of 2018, the Debtor was already insolvent and unable to pay its bills as they became due.

3.14    Alea and Robert continued to operate the company as the Governors once Fletcher left.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 5

3.15    Battin died on February 17, 2020. Thereafter Alea was the sole member and the sole Governor of the Debtor.

**Unpaid Taxes**

3.16    According to the proof of claim filed by the IRS, claim #7, The Debtor has not filed a tax return or made a payment to the IRS since 2018. The IRS proof of claim is in the amount of $383,842.83.

3.17    According to the proof of claims filed by the State of Washington Department of Revenue, the Debtor owes taxes from January 1 ,2020 through July 31, 2021. The WA DOR has filed a proof of claim #6 in the amount of $166,671.60 for unpaid excise tax.

3.18    The Debtor owes taxes to the Washington State Department of Labor & Industries for the 3rd quarter of 2020. It has filed a proof of claim in the amount of $10,664.66. In 202, 1L&I sought tax warrants against the Debtor.

3.19    The Debtor has not made a payment of the Locals 302 and 612 of the International Union of Operating Engineers-Employers Training Trust Fund since February of 2020. A Judgment was entered against the Debtor on March 9, 2021 in the amount of $59,361.18.

3.20    The Debtor ceased making payments to Northwest Laborers-Employers Trusts in 2019. It has filed a proof of claim in the amount of $52,450.01.

**PPP Loans**

3.26    On May 1, 2020, the Debtor executed a Promissory Note with Columbia State Bank for a PPP Loan in the amount of $109,669.07. The money was deposited into the Debtor's Columbia Bank account ending in 5238. Upon information and belief, the Plaintiff alleges that none or almost none of the money was used for payroll and other

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 6

approved purposes authorized under the CARES act. Most of the funds was used for payments to factoring companies and non-traditional lenders.

3.27    On March 15, 2021 the Debtor and Community Financial Services entered into a Promissory Note for a second PPP Loan in the amount of $125,712.00. The money was deposited into the Debtor's bank account at Columbia Bank ending in 5238. Upon information and belief, the Plaintiff alleges that none or almost none of the money was used for payroll and other approved purposes authorized under the CARES act. Approximately $15,000 of the funds were paid directly to Alea. $78,259.75 was paid to factoring companies and or hard/semi-hard money lenders including Forward Financing, SPG Advance, Par Funding, LG Funding, Bluevine Capital and Kabbage. Upon information and belief, the Trustee alleges that Alea was a personal guarantor of most, if not all the loans, from these companies.

3.28    Upon information and belief, the Plaintiff alleges that neither of the PPP Loans were forgiven and  the Debtor scheduled both lenders as unsecured creditors on bankruptcy schedule E/F, 3.5 and 3.6.

3.29    The actions of Alea in obtaining $235,381.07 in PPP loans and inappropriately using the funds for unauthorized purposes caused the Debtor to incur $235,381.07of debt which it did not have the ability to repay as it was already insolvent and unable to pay its debts. Incurring the loans was a breach of the fiduciary duty Alea owed to the creditors of the Debtor and the Debtor itself.

**Bankruptcy Consultation and Setting up of New Company**

3.30    In February of 2021, the Debtor contacted David Hill and Hill Law and transferred $3,000 as a bankruptcy retainer to him.

3.31    On April 9, 2021, Getting Dirty Excavating & Trucking, LLC was formed in Washington. The Governor  and sole member is Alea Battin.

COMPLAINT

Page 7

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

3.32    On June 9, 2021 Getting Dirty Excavating & Trucking, LLC. was named as an additional insured on both the vehicle and the equipment policies.

3.33    Alea has testified that Getting Dirty Excavating and Trucking, LLC never operated.

**Purchase and Subsequent Sale of Truck Weld Dump Truck & Retention of Funds**

3.34    On October 31, 2019, the Debtor entered into an agreement with Pape Kenworth NW to purchase a 2019 Truckweld, Dump Truck for a price of $243,755.58. ("Truckweld Dump Truck") The credit application was signed by Alea as a Member of Ridgeback. The Debtor made a $50,000 down payment. The remainder of the purchase price was financed by Paccar.

3.35    On July 23, 2021, Paccar sent a letter demanding that the Debtor bring current the past due payments owing on the contract.

3.36    The Debtor decided to sell the Truckweld Dump Truck. On November 24, 2021, the Debtor obtained a payoff from in the amount of $150,487.35.

3.37    The Debtor sold the Truckweld Dump Truck on December 1, 2021, to Loren Watts for $210,000. $150,487.00 was paid to Paccar and $59,512.65 was deposited into the Debtor JP Morgan Chase bank account ("JPMC"). The Debtor reported the $150,487.00 as the sales price to the DOL, not the $210,000.

3.38    On December 3, 2021, Alea withdrew $55,696 of the funds from the Debtors' JPMC bank account. $22,696 of these funds were used to purchase Cashier's Check #1016416691 made payable to Camillo Properties, Ltd, as payment for a house that Alea Battin was either purchasing or renting on Butter Cup Drive in Texas City, Texas. The other $33,000 was designated as a payment to Robert Cohen.

3.39    The transfer of the Truckweld Dump Truck was required to be disclosed in answer to question 13.1 on the SOFA. The Debtor stated 2020 KW T880 Dump Truck -

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 8

$159,750- Returned to Other Company. This statement is not accurate. The Truck was not returned, it was sold, and the debtor made almost a $60,000 profit on the sale, the vast majority of which was then transferred to Alea.

**Transfers to Lending Club**

3.40 Within two years of the Petition Date, the Debtor made transfers to the Lending Club of at least $12,800 and at least $28,160 within four years of the Petition Date.

3.41 Upon information and belief, the Plaintiff alleges that the obligor on the Lending Club obligation is Alea Battin not the Debtor.

3.42 The Lending Club is not listed as a creditor on the Debtor's bankruptcy schedules.

3.43 Upon information and belief, the Plaintiff alleges that the transfers by the Debtor to the Lending Club were avoidable fraudulent transfers because there was no obligation owing by the Debtor to the Lending Club.

**Transfers to Cashable**

3.44 The Debtor started making transfers to Cashable on February 2, 2021, two days before the Debtor transferred $3,000 to the Hill Law Firm.

3.45 Upon information and belief, the Plaintiff alleges that Cashable is a firm that sells both cashable and redeemable guaranteed investment certificates ("GIC").

3.46 Upon information and belief, the Plaintiff alleges that a GIC is a liquid investment which has a one-year term but locks the investment in for only 30 to 90 days. Once the locked-in period expires, the GOC can be cashed out without penalty. GIC's are very common in Canada.

3.47 Upon information and belief, the Plaintiff alleges that the Debtor did not have a relationship with Cashable and had no obligation to pay Cashable.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

3.48 Upon information and belief, the Platintiff alleges that the Debtor made at least 40 transfers of $799.00 each to Cashable over the time period of February 2, 2021 through April 30, 2021.

3.49 Upon information and belief, the Plaintiff alleges that within one year of the Petition Date the Debtor made payments to Cashable in the amount of at least $31,960.00.

3.50 Cashable is not listed as a creditor on the Debtor's bankruptcy schedules.

3.51 If the payments to Cashable were for a GIC held in the name of the Debtor, Cashable is holding property of the estate that should be turned over to the Trustee.

3.52 The Debtor's schedules do not disclose any GIC's it owns.

3.53 Upon information and belief, the Plaintiff alleges that the transfers to Cashable were made with actual intent to hinder, delay or defraud the creditors of the Debtor, including the taxing authorities, and to prevent the creditors from obtaining and liquidating the assets of the Debtor.

**Transfers to Robert Cohen**

3.54 Robert Cohen was an employee of the Debtor. He is also an authorized user on the Chase Bank debit card.

3.55 On April 3, 2021, Alea withdrew $17,618.00 from the Debtor's JPMC bank account and purchased Cashier's Check 1016415962 issued by JPMC, made payable to Robert Cohen in the amount of $17,618.00.

3.56 Alea testified that in October, 2021 the Debtor gave Robert Cohen a 1974 Kenworth W 900 Dump Truck, allegedly in payment of back wages the Debtor owed him of $35,000.

COMPLAINT

Page 10

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

3.57    Upon information and belief, the Plaintiff alleges that if the title to the truck remains in the name of the Debtor, and if title was in fact transferred it was in late November or early December of 2021.

3.58    Upon information and belief, the Trustee alleges that Robert Cohen was not owed any back wages, or was not owed $35,000 of back wages, and the Debtor did not receive reasonably equivalent value in exchange for the transfer of the truck.

3.59    On December 3, 2021, Alea withdrew $55,696.00 from the Debtor's Chase bank account and on the withdrawal slip indicated $22,696 was for a Cashier's Check for Camillo Properties and $33,000 was for Robert Cohen.

3.60    Upon information and belief, the $50,608 was transferred to Robert Cohen but there was no antecedent debt owing between the Debtor and Mr. Cohen, and as such the transfers constitute fraudulent transfers.

3.61    Alternatively, upon information and belief, the Plaintiff alleges that the Debtor owed an antecedent debt to Mr. Cohen and the transfer of the $33,000 was made while the debtor was insolvent, within 90-days of the Petition Date, and resulted in his receiving more than he would have received had the payment not been made and more that what he would receive under a bankruptcy distribution.

3.62    Upon information and belief, the Plaintiff alleges that the transfers to Robert Cohen were made with actual intent to hinder, delay or defraud the creditors of the Debtor, including the taxing authorities, and to prevent the creditors from obtaining and liquidating the assets of the Debtor.

**Transfer to Randy Kan**

3.63    The Debtor purchased a 2015 Dodge 4500 Utility Flatbed Truck ("Flatbed Truck") from Randy Kan in July, 2019. According to the testimony of Alea, when it was

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 11

purchased, it had been totaled and the Debtor refurbished it so the Debtor could use it as a flatbed work truck.

3.64    The 2015 Dodge Truck was listed as an insured vehicle on the Debtor's Liberty Mutual insurance policy. It was added to the policy in early June, 2018. The cost was listed as $40,273 when it was added to the policy. There was no lien holder added to the policy when the Dodge Truck was added.

3.65    In answer to question 13.2 on the SOFA the Debtor stated that the 2015 Dodge Truck was returned to Randy Kan in October, 2021. Alea confirmed that the Flatbed Truck was given to Mr. Kan in late 2021. Upon information and belief, the Plaintiff alleges that the transfers were made in late November if at all, as title appears to still be in the name of the Debtor.

3.66    Upon information and belief, the Plaintiff alleges that the Debtor was insolvent on the date of the transfer to Kan.

3.67    Upon information and belief, the Plaintiff alleges that the 2015 Dodge Truck was owned free and clear by the Debtor.

3.68    Upon information and belief, the Plaintiff alleges that there was no antecedent debt owing to Randy Kan by the Debtor

3.69    According to the testimony of Alea, when the truck was returned it had a value of $40,000.

3.70    Upon information and belief, the Plaintiff alleges that Randy Kan paid no consideration to the Debtor or minimal consideration for the transfer of the 2015 Dodge Truck to him, even though the value of the truck was approximately $40,000.

3.71    Upon information and belief, the Plaintiff alleges that the Debtor did not receive reasonably equivalent value in exchange for the transfer.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

Page 12

3.72    Upon information and belief, the Plaintiff alleges that there were other transfers made to or for the benefit of Defendants Kan which are avoidable.

3.73    Upon information and belief, the Plaintiff alleges that the transfer of the truck to Randy Kan were made with actual intent to hinder, delay or defraud the creditors of the Debtor, including the taxing authorities, and to prevent the creditors from obtaining and liquidating the assets of the Debtor.

**Transfers to Javines**

3.74    Alea testified that the Debtor borrowed money from her parents, Williams and Donna Javines, who are insiders of the Debtor. The first time they loaned $25,000. Upon information and belief, the Plaintiff alleges that the loan was made to Battin and Alea, not Ridgeback.

3.75    Upon information and belief, the Plaintiff alleges that the Debtor signed a Promissory Note for at least $25,000 and eventually paid it all back.

3.76    Upon information and belief, the Plaintiff alleges that the Debtor did not receive reasonably equivalent value in exchange for the payment of $25,000 to the Javines.

3.77    On July 30, 2020, the Javines made a check payable to Alea Battin in the amount of $19,000. The check was deposited into Battin's personal WSECU bank account.

3.78    Alea Battin did not deposit $19,000 into the Ridgeback bank account. Rather the funds were largely used for personal expense.

3.79    On October 13, 2020, Ridgeback made check number 12123501 payable to William Javines in the amount of 15,583.33.

3.80    Upon information and belief, the Plaintiff alleges that there were other transfers made to or for the benefit of the Javines which are avoidable.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 13

3.81    Upon information and belief, the Plaintiff alleges that the Debtor did not receive any benefit or reasonably equivalent value for the transfers it made to the Javines.

3.82    Upon information and belief, the Plaintiff alleges that the transfers to the Javines were made with actual intent to hinder, delay or defraud the creditors of the Debtor, including the taxing authorities, and to prevent the creditors from obtaining and liquidating the assets of the Debtor.

**Transfers to Alea Battin**

3.83    Upon information and belief, the Plaintiff alleges that in the one year period prior to the Petition Date, Alea made cash withdrawal and ATM withdrawals of at least $15,000 and she withdrew at least $20,000 in cash in the two year period prior to the Petition Date.

3.84    Alea withdrew $55,696 in cash when the Debtor sold the Truckweld Dump Truck.

3.85    The Debtor made payments to the Lending Club within two years of the Petition Date in the amount of $12,800, and $28,160 within four years, which were made to or for the benefit of Alea.

3.86    There were substantial transfers to Alea from the Debtor in payment of "note." However, Alea testified there are no Promissory Notes between her and the Debtor. Thus, there was no antecedent debt that existed between the Debtor and Alea. As such, any transfers made to Alea in payment of the note were fraudulent.

3.87    The Debtor made transfers to Cashable, which upon information and belief, the Plaintiff alleges were for the benefit of Alea.

3.88    Upon information and belief, the Plaintiff alleges that there were other transfers made to or for the benefit of Alea which are avoidable.

COMPLAINT

Page 14

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

3.89    Upon information and belief, the Plaintiff alleges that the Debtor did not receive any benefit or reasonably equivalent value for the transfers it made to Alea.

3.90    Alea made the decision to seek two PPP Loans and use the proceeds for purposes not authorized under the CARES act.

**New Line Lawsuit**

3.91    Alea Battin as member RBE signed a preliminary contract with New Line Services DBA Agate Asphalt for site work and paving to be completed for the CHI Franciscan project located at 4207 Kitsap Way, Bremerton, WA 98312. RBE was subcontractor for Sellen construction for site work including grading, paving, curbing and other underground utilities.

3.92    On April 29, 2020, Agate completed their work. Upon information and belief, the Plaintiff alleges that although Ridgeback was paid  by the general contractor it only remitted a portion of the amount owed to New Line/ Agate Asphalt. On November 9, 2020, the Debtor signed a Promissory Note to New Line for $146,275.67, with payments commencing in December, 2020. The Debtor made the first payment and did not make any further payments.

3.93    On July 28, 2021, New Line filed a complaint in Kitsap County Superior Court to collect on the note, case no. 21-2-01124-18.

3.94    On December 3, 2021, a judgment was entered against the Debtor in the amount of $143,747,51 in favor of New Line.

3.95    On February 4, 2022, an order was entered requiring the Debtor to appear for a Supplemental Proceeding.

**Failure to disclose information on the schedules**

3.96    The Debtor operated in 2021 and, yet in answer to question 1 on the Statement of Financial Affairs ("SOFA") it indicates it had no income whatsoever in 2021.

COMPLAINT

Page 15

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

3.97    In Answer to question 3 on the SOFA the Debtor failed to disclose all of the transfers within 90 days of the Petition Date, including the transfers to Alea and Robert Cohen.

3.98    In answer to question 4 on the SOFA, the Debtor failed to disclose transfers made within one year of the Petition Date that were made to or for her benefit or the benefit of other insiders, mainly Alea.

3.99    The Debtor failed to disclose that on May 2, 2021, the Debtor sold a 1997 Ford F350 Vin ending 1010 to Kitsap Quary for $4,500.

**Solvency**

3.92    The Debtor was insolvent from the date it started operating its business . There was no capital contribution ever made by the principals. Alea testified that the only way they could pay the bills was by using their personal credit cards. Alea also testified that they could not pay for the heavy equipment expenses, suppliers and the taxes because there was not enough money to pay everything. She testified that when Battin was alive and operating the company he believed in paying payroll first, materials and supplies for the jobs second and taxes third.

3.93  The Debtor had virtually no assets which were owned free and clear of liens. Most were secured by the lender. Further, Pacific Leasing had a UCC-1 against all assets of the Debtor.

3.94    Upon information and belief, the Plaintiff alleges that the Debtor was insolvent and unable to pay its debts as they became as evidenced by the lack of payment to the taxing authorities, the debt owed to New Line and its reliance on factoring and semi-hard/hard money loans to operate the company.

3.95    The Debtor's bankruptcy schedules list assets of $130,300 and liabilities of $1,253,649.97.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 16

3.96    Alea testified that by that ty the end of 2019 the Debtor did not have enough income to service its tax debt and other obligations.

## IV.    FIRST CAUSE OF ACTION:  PREFERENTIAL TRANSFERS 11 U.S.C. §547 OF THE CODE DEFENDANTS ALEA, KAN, COHEN AND JAVINES

1.1    Paragraphs I through III and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

1.2    The transfers by the Debtor to Defendants Kan and Cohen were made within 90-days of the Petition Date and the transfers to Defendants Alea and Javines were made within one within one year of the Petition Date and all constitute transfers by the Debtor of an interest in property.

1.3    Defendants Alea and Javines are insiders of the Debtor as defined in Section 101(31) of the Bankruptcy Code because Defendant Alea is the managing Member and person in control of the Debtor and the Javines are her parents.

1.4    The transfers from the Debtor to Defendants Alea, Javines, Kan and Cohen were made for or on account of an antecedent debt owed by the Debtor to Defendants Alea, Kan, Cohen and Javines.

1.5    At the time of the transfers referred to in Paragraph III, above, the Debtor was insolvent.

1.6    The transfers referred to in Paragraph III, above, enabled Defendants Alea, Kan, Cohen and Javines to receive more than they would have received if the case were a case under Chapter 7 of Title 11 of the United States Code, the transfers had not been made, and  they received payment of their debts to the extent provided by the provisions of Title 11 of the United States Code.

## V.  SECOND CAUSE OF ACTION FRAUDULENT TRANSFERS UNDER SECTION 548   BANKRUPTCY CODE – All DEFENDANTS

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

Page 17

2.1     Sections I through IV and all subsections thereof are hereby repeated and incorporated as though fully set forth herein.

2.2     Transfers were made by the Debtor to or for the benefit of all of the Defendants within two years of the Petition Date.

2.3     The Debtor did not receive reasonably equivalent value in exchange for the transfers to all of the Defendants as set forth in paragraph III above.

2.4     The Debtor was insolvent on the date of the transfers set forth in paragraph III above which were made to or for the benefit of all of the Defendants.

2.5     The transfers referred to in paragraph III above to all of the Defendants were made with actual intent to hinder, delay and defraud creditors to whom the Debtor was indebted before or after the date of the transfers, including its creditor and the State and Federal taxing agencies.

2.6     The transfers to all of the Defendants set forth in paragraph III above are avoidable pursuant to 11 U.S.C. §548 as stated therein as they were either a) made with actual intent to hinder, delay or defraud creditors to whom the Debtor was indebted on or after the date of the transfers; or b) the Debtor received less than reasonably equivalent value in exchange for the transfers, became insolvent or was insolvent at the time of the transfer, leaving the Debtor with an unreasonably low capital account or leaving the debtor unable to pay its debts as they became due.

2.7     The transfers made by the Debtor to all Defendants as set forth in paragraph III above are avoidable by the Plaintiff under 11 U.S.C. §548(a)(1) or (a)(2).

### VI. THIRD CAUSE OF ACTION: FRAUDULENT TRANSFERS UNDER FEDERAL LAW ALL DEFENDANTS

3.1     Plaintiff alleges and incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 18

3.2 As described above, the Debtor improperly and fraudulently transferred substantial funds to all of the Defendants.

3.3 At the time of the Transfers set forth above the Debtor and its principals knew it had significant outstanding liabilities owed to the IRS.

3.4 The Transfers were made to or for the benefit of All Defendants.

3.5 The Debtor made the Transfers with the actual intent to hinder, delay, or defraud the creditors or future creditors of the Debtor.

3.6 The Transfers set forth above were to or for the benefit of insiders of the Debtor.

3.7 The Debtor did not retain possession or control of the Transfers after the Transfers were made.

3.8 The Transfers were not disclosed but rather concealed from the public and Debtor's creditors because the Debtor is a privately held company.

3.9 Before the Transfers were made, the Debtor had been sued ort threatened with suit to recover its unpaid taxes.

3.10 The Debtor concealed assets from its present and future creditors through the Transfers.

3.11 At the time the Transfers were made, or thereafter, the United States of America was a creditor of the Debtor.

3.12 The United States of America (the "United States") is a creditor of the Debtor holding a Section 507 priority claim against the Debtor in the amount of $782,475.00 and an unsecured claim against the Debtor in the amount of $60,760.35. The IRS would have a right under applicable non-bankruptcy law, including without limitation, 28 U.S.C. §3304(b)), to avoid the Transfers.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

3.13    The Debtor was effectively insolvent at the time of the Transfers or became insolvent after the Transfers to All Defendants.

3.14    The Transfers occurred shortly before or shortly after substantial debts were continuously being incurred with respect to Debtor's unpaid tax liabilities.

3.15    At the time of the Transfers, the Debtor would not be able to pay its debts and liabilities as they became due because of its debts owed to the IRS, the State of Washington taxing agencies its secured creditors, and its unsecured creditors.

3.16    At the time of the Transfers, the sum of the Debtor's debts including its tax liabilities was greater than all of the Debtor's assets.

3.17    As a result of the Transfers, the Debtors and their creditors have been harmed and damaged.

3.18    All of the Defendants benefited from the fraudulent conveyance of the Transfers.

3.19    Under 11 U.S.C. §544(b)(1) a trustee may "step into the shoes" of an unsecured creditor to recover transfers such actual creditor would have been able to recover save for the filing of the bankruptcy case.

3.20    A trustee's action under § 544(b) is timely if the unsecured creditor's claim may be timely brought under the applicable law including, but not limited to, 28 U.S.C. § 3306(b)(1), which provides that the United States may bring an action to avoid a transfer done with actual intent to hinder, delay, or defraud a creditor within two years after the transfer was, or reasonably could have been, discovered by the claimant. This claim is timely pursuant to 11 U.S.C. § 546(a).

3.21    The fraudulent nature of the Transfers was not and could not reasonably have been discovered by the Debtors' creditors, including without limitation, the United States, or the Plaintiff until after the Petition date.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

Page 20

3.22 Under 22 U.S.C. §544, a transaction that is voidable by a single, actual unsecured creditor may be avoided in its entirety, regardless of the size of the creditor's claim. In other words, even if the triggering creditor is owed only a nominal amount, the entire transfer can be avoided and used to satisfy claims of creditors.

3.23 Under 11 U.S.C. §§544(b), 550(a) and 551, 28 U.S.C. § 3304, and/or other applicable law, Plaintiff is entitled to avoid and recover the Transfers or value of the distributions transferred to all of the Defendants, with interest, and preserve the recovered Transfers for the benefit of the estate.

### VII. FOURTH CAUSE OF ACTION: FRAUDULENT CONVEYANCES 11 U.S.C. §544 AND RCW 19.40. TO ALLL DEFENDANTS

4.1 Paragraphs 1 through VI and all subsections thereof are hereby repeated and incorporated as though fully set forth herein.

4.2 Transfers were made to or for the benefit of all Defendants within four years of the Petition Date.

4.3 The Debtor made the transfers set forth in paragraph III above which are avoidable pursuant to RCW 19.40.010 et seq. as stated therein.

4.4 The transfers by the Debtor to all Defendants as set forth in Paragraph III above were made with actual intent to hinder, delay or defraud creditors of the Debtor.

4.5 The transfers by the Debtor to all Defendants as set forth in Paragraph III were made without the Debtor receiving reasonably equivalent value in exchange for the transfers.

4.6 The transfers by the Debtor to all Defendants as set forth in Paragraph III above caused the Debtor to engage or thereafter engage in business for which the remaining assets of the Debtor were unreasonably small in relation to the business or transactions.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

4.7    The transfers by the Debtor to all Defendants should have caused the Debtor to believe that it would incur debts beyond its ability to pay as they became due.

4.8    The transfers by the Debtor to all Defendants as set forth in Paragraph III above were not made in exchange for reasonably equivalent value.

4.9    The Debtor was insolvent on the date of each, and every transfer set forth in paragraph III above  Its assets were less than its liabilities and it was not paying its obligations as they became due. Alternatively, the Debtor became insolvent as a result of the transfers set forth in paragraph III above.

## VIII.  FIFTH CAUSE OF ACTION: TURNOVER OF PROPERTY OF THE ESTATE - §542 OF THE BANKRUPTCY CODE DEFENDANTS ALEA, COHEN AND KAN AND CASHABLE

5.1    Paragraphs I through VII and all subsections thereof are hereby repeated and incorporated as though fully set forth herein.

5.2    Defendants Alea, Cohen, Kan and Cashable are in possession, custody or control of property that the Plaintiff/Trustee may use and/or sell to pay the obligations of this Debtor. Specifically, personal property that belongs to the Debtor.

## IX.    SIXTH CAUSE OF ACTON : BREACH OF FIDUCIARY DUTY DEFENDANT ALEA BATTIN

7.1    The Trustee realleges and incorporates by this reference the allegations set forth in paragraphs I through IX.

7.2    The transfers set forth in paragraph III above to Defendant Alea were unlawful, in violation of RCW 23B.06.400, and thus constituted a breach of Defendants Alea Battin's fiduciary duties owed to the Debtor and its creditors as the Debtor did not receive reasonably equivalent value in exchange for those transfers.

COMPLAINT

Page 22

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

Case 24-01015-CMA    Doc 1    Filed 02/16/24    Ent. 02/16/24 22:11:56    Pg. 22 of 24

7.3    Defendant Alea Battin failed to discharge her duties to the Debtor in good faith, failed to exercise ordinary prudence, and acted contrary to the best interests of the Debtor.

## X.    SEVENTH CAUSE OF ACTION:
## PRESERVATION OF AVOIDED TRANSFERS

10.1    Paragraphs I through IX are hereby repeated and incorporated as though set forth herein.

10.2    Any and all transfers avoided under the claims for relief in this complaint are preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## XI.    PRAYER FOR RELIEF

The Plaintiff asks for the following relief:

11.1    That the Court find the transfers to Defendants Alea, Kan, Cohen and Javines set forth in Paragraph III above constituted preferential transfers of property of the estate that is avoidable pursuant to §547 and should be avoided.

11.2    That the Court find the transfers of the property to all of the Defendants constitute fraudulent transfers pursuant to §§ 548 and 28 U.S.C. § 3304(b) should be avoided.

12.1    That the Court find that the transfers of property of the estate to Defendants Alea, Javines and Lending Club should be avoided pursuant to § 544 and RCW 19.40. *et seq.*.

12.2    That Defendants Alea, Cohen and Kan be ordered to turnover property of the estate.

12.3    That the Court determine Defendant Alea Battin violated her fiduciary duty owed to the Debtor and as such is personally liable to the Debtor for all damages arising from her breach of her fiduciary obligation.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

12.4    That the Court find the avoided transfers are preserved for the benefit of the estate.

12.5    That this Court enter an order consistent with the Complaint and a judgment in an amount to be determined against all Defendants in favor of the Chapter 7 Trustee, and for such other relief as this Court deems just and proper. .

DATED this 16th day of February, 2024.

WOOD & JONES, P.S.

/s/ Denice E. Moewes
Denice E. Moewes, WSBA #19464
Attorney for Chapter 7 Trustee
Edmund J. Wood

COMPLAINT

Page 24

Wood & Jones, PS
303 N 67th Street
Seattle, WA 98103
(206) 623-4382